# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 17-181V

Filed: December 7, 2020

```
* * * * * * * * * * * * * *
NICOLE GIRARDI,                    *      UNPUBLISHED
                                   *
            Petitioner,            *
v.                                 *
                                   *      Decision on Interim Attorneys' Fees and
                                   *      Costs
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
            Respondent.            *
* * * * * * * * * * * * * *
```

*Mark Sadaka, Esq.*, Mark T. Sadaka, LLC, Englewood, NJ, for petitioner.
*Heather Pearlman, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On February 7, 2017, Angela and Joseph Girardi filed a petition for compensation under the National Vaccine Injury Compensation Program[2] on behalf of their then-minor daughter, Nicole Girardi ("Ms. Girardi," or "petitioner"). *See* Petition, ECF No. 1; Amended Petition, ECF No. 10. Petitioner alleges that she developed optic neuritis as a result of receiving a human papillomavirus ("HPV") vaccination on March 20, 2014. Petition ("Pet."), ECF No. 1. Petitioner now seeks an award of interim attorneys' fees and costs. Petitioner's Motion is hereby **GRANTED**.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

The petition was filed on February 7, 2017; an Amended Petition was filed on February 10, 2017. ECF Nos. 1, 10. Petitioner filed medical records through July of 2017. *See* Pet. Ex. 1-10, ECF No. 16; Pet. Ex. 11, ECF No. 17; Pet. Ex. 12, ECF No. 18; Pet. Ex. 13, ECF No. 20.

Respondent filed his Rule 4(c) Report ("Resp. Rpt.") on October 20, 2017, recommending against compensation in this matter. ECF No. 25. Respondent submitted that "the record fail[ed] to establish a causal connection between petitioner's HPV vaccine and her optic neuritis." Resp. Rpt. at 6. An Order was issued for petitioner to file an expert report in support of her claim. Non-PDF Order, issued Oct. 20, 2017.

After requesting and receiving two extensions of time, petitioner filed an expert report from Dr. Steinman, along with supporting medical literature, on March 21, 2018. *See* Motion, ECF No. 26; Non-PDF Order, issued Jan. 16, 2018; Motion, ECF No. 27; Non-PDF Order, issued Mar. 15, 2018; Pet. Ex. 15-40, ECF No. 28.

Respondent filed expert reports from Dr. Lotz, a neurologist, and Dr. Whitton, an immunologist, on September 19, 2018. Resp. Ex. A-B, ECF No. 31; Resp. Ex. C-D, ECF No. 32.

A status conference was held on December 7, 2018, during which the expert reports were discussed. Scheduling Order at 1-2, ECF No. 33. It was noted that, although petitioner submits that she still suffers from a blind spot in her vision, all of her other symptoms had resolved by August 2014, approximately four months after onset. *Id*. at 1. Dr. Lotz opined that any observable blind spot is petitioner's natural blind spot and not a consequence of her optic neuritis. *Id*. at 2. Petitioner was offered the opportunity to submit a report from her treating ophthalmologist on the issue of the blind spot. *Id*. It was also noted that some of petitioner's medical records appeared to be missing pages. *Id*. Petitioner was ordered to file complete records and a supplemental report from Dr. Steinman by March 7, 2019. *Id*.

On March 7, 2019, petitioner filed the missing medical records. *See* Pet. Ex. 9, 14, ECF No. 37. Petitioner requested and received two extensions of time before filing a supplemental report and supporting medical literature from Dr. Steinman on July 3, 2019. *See* Motion, ECF No. 35; Non-PDF Order, issued Mar. 6, 2019; Motion, ECF No. 40; Non-PDF Order, issued June 3, 2019; Pet. Ex. 41, ECF No. 41; Pet. Ex. 42-47, ECF No. 42. Notably, petitioner has not addressed the issue of the ongoing blind spot and its relationship to optic neuritis, if any.

Respondent filed responsive expert reports from Dr. Lotz and Dr. Whitton on October 7, 2019. Resp. Ex. E, ECF No. 44; Resp. Ex. F, ECF No. 45.

A Rule 5 status conference was held on December 16, 2019. The expert reports were discussed in detail. Although Dr. Steinman and Dr. Lotz agreed that petitioner had optic neuritis, Dr. Lotz opined that petitioner's headache 38 days post-vaccination was the onset of her optic neuritis and therefore too far out to be related to the HPV vaccine. Scheduling Order at 1, ECF No. 46. In response to this, Dr. Steinman pointed to a review of four case reports of neuromyelitis optica ("NMO") occurring within months of quadrivalent HPV vaccination. *Id*. Dr. Lotz opined

that optic neuritis is mediated by a different neuroinflammatory process than NMO. *Id*. at 2. It was further noted that Dr. Steinman and Dr. Whitton disagree as to the significance of BLAST searches, upon which Dr. Steinman relies to support his theory of a molecular mimic between the HPV vaccine and myelin antigens that are attacked in optic neuritis. *Id*. Petitioner was ordered to submit a reasonable demand to respondent. *Id*. at 3. The parties were ordered to file a joint status report identifying potential hearing dates in March 2022. *Id*.

A prehearing order was issued on February 24, 2020, setting an entitlement hearing for March 7 and 8, 2022. ECF No. 49. Respondent filed a status report on April 2, 2020, advising that respondent would continue to defend this case. ECF No. 51.

On July 21, 2020, petitioner filed a Motion for Interim Attorneys' Fees and Costs. Motion for Interim Fees, ECF No. 52. Petitioner requests attorneys' fees in the amount of $37,764.69 and attorney costs in the amount of $19,006.96, for a total amount of $56,771.65. Motion for Interim Fees, Ex. A at 19-20.

On July 30, 2020, respondent filed a response to petitioner's Motion for Fees. Response, ECF No. 53. Respondent "defer[ed] to the Special Master to determine whether or not petitioner has met the legal standard for an interim fees and costs award" as well as "whether there is a reasonable basis for the claim." *Id*. at 2.

Petitioner filed a reply on July 31, 2020, reiterating her request for an award of interim fees. ECF No. 54.

This matter is now ripe for decision.

## II. Applicable Law

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs ("fees" or "fee award"). *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or looming statute of limitations, that evaluates the sufficiency of petitioner's available medical records at the time a claim is filed. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis is to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018). Reasonable basis

is satisfied when available objective evidence, such as medical records or medical opinions, support a feasible claim prior to filing. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); s*ee Silva v. Sec'y of Health & Hum. Servs*., 108 Fed. Cl. 401, 405 (2012). Where causation is a necessary element to petitioner's claim, petitioner must provide some objective support of a causal relationship between administration of the vaccine and the petitioner's injuries in order to establish that a claim was feasible. *See Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 114 (2018).

Determination of feasibility is limited to the objective evidence submitted, *Santacroce*, 2018 WL 405121 at *7, but a special master is not precluded from considering objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation."*Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa. See Cottingham ex. Rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020). The Court reiterated that counsel conduct is subjective evidence, not to be considered when evaluating reasonable basis. *Cottingham*, 971 F.3d at 1345.

While incomplete records do not strictly prohibit a finding of reasonable basis, *Chuisano*, 116 Fed. Cl. at 288, an overwhelming lack of objective evidence will not support reasonable basis. *See Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner disappeared for two years prior to filing a claim). Additionally, a petitioner's own statements are not "objective" for purposes of evaluating reasonable basis and cannot alone support reasonable basis. *See, e.g., Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018). A claim may lose reasonable basis as it progresses, if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Pereira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

Despite broad discretion, a special master may not abuse their discretion in denying reasonable basis and fees. The Federal Circuit articulated, "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion" by the special master. *Cottingham*, 971 F.3d at 1345. The petitioner in *Cottingham* submitted an affidavit, a vaccine package insert and several medical records showing that petitioner suffered adverse reactions listed on the package insert after receiving the vaccine. *See id.* at 1345-46. The Court found that the materials constituted such objective evidence that denying reasonable basis because of "no evidence" was clearly erroneous. *Id.* at 1346-47. Denial of reasonable basis for lack of causation in *Cottingham* constituted an abuse of discretion. *Id.* at 1347. The Court reminded that the burden of proof required for reasonable basis is not as high as that required for causation— "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Id.* at 1346. However, the Court held that the special master may make factual determinations as to the weight of evidence. *Id.* at 1347.

## III. Analysis

### A.      Reasonable Basis

Petitioner argues that her claim has a reasonable basis, submitting that "the approximately 30-days between vaccination and onset of symptoms is reasonable and expected for onset of optic neuritis based on the literature provided by petitioner." Motion for Interim Fees at 3. Petitioner also "relie[d] on the expert opinion of Dr. Lawrence Steinman, M.D." *Id*. Petitioner is correct that an expert opinion supported by medical literature bolsters the basis for a claim; however, an expert opinion "in and of itself does not determine reasonableness." *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993).

Ultimately, though, the amount of support required for a claim to meet the reasonable basis requirement is lower than the "preponderance of the evidence" standard used for entitlement decisions. *See Chuisano*, 116 Fed. Cl. at 283. At this juncture, petitioner has met this nebulous standard. Petitioner is advised, however, that a claim may lose reasonable basis as it progresses, if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019). In order for this claim to maintain reasonable basis moving forward, there are issues in this matter that need to be addressed, including but not limited to, whether 38 days is an appropriate period of onset for optic neuritis following bivalent HPV vaccination and whether petitioner's blind spot, which is the only sequelae of her alleged injury persisting in excess of six months, is the result of her optic neuritis.

### B.      Interim Fees

Special masters are afforded broad discretion in determining whether interim fees are appropriate. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The court in *Avera* held that interim fees may be awarded in "appropriate circumstances." *Id*. at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly appropriate" to award interim fees. 515 F.3d at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorneys' fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them. *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs*. No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Under the circumstances of this case, interim fees are warranted. This matter has been pending for over three years, which ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g., Thompson v. Sec'y of Health & Human Servs*., No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship in petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees). Moreover, petitioner has expended significant time and costs in litigating this matter, and as an entitlement hearing is

currently scheduled for March 2022, the matter will not resolve for quite some time. In sum, the circumstances of this case warrant an award of interim fees and costs, so as not to impose economic hardship on petitioner.

## C.    Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner has requested the following forum hourly rates for her attorney, Mark Sadaka: $350.00 for work performed in 2014 and 2015, $362.95 for work performed in 2016, $376.38 for work performed in 2017, $396.00 for work performed in 2018, $405.00 for work performed in 2019, and $422.00 for work performed in 2020. For paralegals, petitioner has requested hourly rates of $135.00 for work performed in 2014 and 2015, $140.00 for work performed in 2016, $145.17 for work performed in 2017, $156.00 for work performed in 2018 and 2019, and $163.00 for work performed in 2020. The requested rates are consistent with McCulloch and with what Mr. Sadaka has previously been awarded in the Program, and the undersigned finds them to be

---

[3] The fee schedules are posted on the Court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys - Forum-Rate-Fee-Schedule2015-2016.pdf (last visited Dec. 2, 2020); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2017*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2017.pdf (last visited Dec. 2, 2020); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2018*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf (last visited Dec. 2, 2020); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2019*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf (last visited Dec. 2, 2020); Office of Special Masters, *Attorneys' Form Hourly Rate Fee Schedule: 2020*, http://uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf (last visited Dec. 2, 2020).

reasonable herein. *See, e.g., Corbett v. Sec'y of Health & Human Servs.*, No. 17-460V, 2020 WL 7024360, at *7 (Fed. Cl. Spec. Mstr. Nov. 3, 2020); *Nifakos v. Sec'y of Health & Human Servs.*, No. 14-236V, 2020 WL 6387317, at *5 (Fed. Cl. Spec. Mstr. Sept. 15, 2020).

## D.     Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of petitioner's application, the number of hours expended in this case appear to be reasonable. Accordingly, $37,764.69 is awarded in attorneys' fees.

## E.     Reasonable Costs

Petitioner requested $19,006.96 in attorneys' costs, consisting of $18,125.00 in expert fees to Dr. Steinman, $472.55 in costs associated with obtaining medical records, the $400.00 filing fee, and $9.42 in shipping and mailing costs. *See* Motion for Interim Fees, Ex. A at 19-20. Dr. Steinman billed six hours at an hourly rate of $500.00 for work performed in 2017 and 27.5 hours at an hourly rate of $550.00 for work performed in 2018 and 2019. *See* Motion for Interim Fees, Ex. B at 5-6, 8. Dr. Steinman has previously been awarded an hourly rate of $550.00. *See Anderson v. Sec'y of Health & Human Servs.*, No. 14-879V, 2020 WL 3495950, at *2 (Fed. Cl. Spec. Mstr. May 22, 2020) (Finding that "Dr. Steinman's expertise in the medical field and long-standing participation in the Vaccine Program" warranted a "modest" increase in his hourly rate from $500.00 to $550.00). With the exception of $1.40 billed in shipping and mailing costs, all of the

requested costs were adequately documented. Petitioner's requested costs will be reduced by $1.40 but are otherwise reasonable. Accordingly, petitioner is awarded $19,005.56 in attorneys' costs.

### IV. Total Award Summary

Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED**. Accordingly, I award **$56,770.25**, representing $37,764.69 in attorneys' fees and $19,005.56 in attorneys' costs in the form of a check payable jointly to **petitioner and petitioner's counsel, Mark Sadaka**. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

   **IT IS SO ORDERED.**

<u>**s/ Mindy Michaels Roth**</u>
Mindy Michaels Roth
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.